IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HENRY R. TAYLOR, JR., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. Action No. 07-244-JJF |
| | : | |
| KATHLEEN D. FELDMAN, et al., | : | |
| | : | |
| Defendants. | : | |

Henry R. Taylor, Jr., Pro se Plaintiff, James T. Vaughn
Correctional Center, Smyrna, Delaware.

Marc P. Niedzielski, Esquire, Deputy Attorney General, Delaware
Department of Justice.  Attorney for Defendants.

**MEMORANDUM OPINION**

September 30 , 2009
Wilmington, Delaware

**Farnan, District Judge**

Plaintiff Henry R. Taylor, Jr., ("Plaintiff"), an inmate currently incarcerated at the James T. Vaughn Correctional Center ("VCC") filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  He also raises supplemental claims.  Plaintiff proceeds pro se and has been granted leave to proceed in forma pauperis.  Presently before the Court is Defendants' Motion For Summary Judgment and Plaintiff's opposition.  (D.I. 79.)  For the reasons discussed below, the Court will grant Defendants' Motion For Summary Judgment as to the federal claims and will decline to exercise supplemental jurisdiction over the State claims.

**I.   BACKGROUND**

Plaintiff alleges violations of his constitutional rights to access the courts and due process, and violations of the Delaware Constitution and Delaware Laws.  More specifically, he alleges that Defendants court reporters Kathleen D. Feldman ("Feldman"), Jeanne K. Cahill ("Cahill"), and Patrick J. O'Hare ("O'Hare"), New Castle County Prothonotary Sharon Agnew ("Agnew"), and Service Manager for the Delaware Public Archives ("Archives") James Frazier ("Frazier") failed to retain and/or destroyed court records.

The following facts are taken from the Complaint and other

1

documents and exhibits submitted by the parties.  In 1983
Plaintiff was convicted of burglary in the second degree.  <u>State</u>
<u>v. Taylor</u>, I.D. No. 3090347DI, 2007 WL 2193752 n.5 (Del. Super.
Ct. July 27, 2007), <u>aff'd</u>, 950 A.2d 660, 2008 WL 2232675
(Del. June 02, 2008) (Table decision).  On April 8, 1985,
Plaintiff pled guilty to two counts of burglary in the second
degree. (D.I. 32, <u>State v. Taylor</u>, I.D. No. 30406643 for Criminal
Action No. IN84-09-0298 and INN84-09-0300.)  Plaintiff signed a
Plea Agreement and a Guilty Plea Form on April 8, 1985.  (D.I.
32, D000008-9.)  He was sentenced on August 21, 1985.  (<u>Id</u>. at
D0000010.)  He did not file a direct appeal or seek post-
conviction relief.

On September 6, 1989, Plaintiff was again convicted of
burglary in the second degree.  <u>Taylor</u>, 2007 WL 2193752, at *1.
He was declared a habitual offender and sentenced to life
imprisonment.  <u>Id</u>.  The 1989 conviction and sentence was affirmed
on direct appeal and three subsequent motions for post-conviction
relief were denied.  <u>Id</u>.  Plaintiff's last motion for post-
conviction relief was denied on July 27, 2007.  <u>Taylor</u>, 2007 WL
2193752.

On July 20, 1989, stenographic notes from January 28, 1985,
to October 10, 1985, were transferred from the Superior Court to

the state records center for storage.[1]  (D.I. 31, D000001.)  The
steno notes for I.D. No. 30406643 were included in the transfer.
The transfer form states, "pursuant to the records retention
schedule cited above (i.e., 1217), [the] records will be retained
until 10 years.  The date disposal is authorized by a schedule."
(Id.)  The records were received by the Bureau of Archives and
Records on August 22, 1989.  (Id.)  Pursuant to the noted ten
year schedule, the stenographic notes from January 28, 1985 to
October 10, 1985, were destroyed by the Archives' staff in
October 1995.  (Id.)  The court reporters did not destroy the
records.  (D.I. 50, ¶ 5.)

    Four years after the stenographic notes were transferred
from the Superior Court, some retention instructions were
amended, with approval on April 9, 1992, of the retention
instruction relevant to this case, Record Group 1217, Agency
Superior Court, Unit Court Reporter's Office, Series # CR-
002(CRCR-1).[2]  (Id. at D000004.)  The instruction now provides

---

[1]Prior to transfer, the Superior Court purges certain
documents in a criminal case.  (D.I. 31, D000006; "To Be
Discarded, approved Apr. 19, 1993.)

[2]Prior to amendment of the retention instruction, Delaware
Superior Court Criminal Rule 55 was revised, effective January 1,
1992.  The revision added Section (e) which provides for
destruction of stenographic notes in felony cases after twenty
years.  Rule 55 did not contain a destruction of notes provision
prior to its 1992 revision.

that stenographic notes in criminal action cases are retained for
twenty years before they are destroyed. (Id.)

On an unknown date in 1998, Plaintiff requested copies of
the guilty plea proceeding transcript and sentencing record in ID
No. 30406643DI. (D.I. 2, ex. 1.) David G. Meddings
("Meddings"), at the time Chief Court Report for the Superior
Court of the State of Delaware, responded on March 30, 1998,
noting that the letter had been received on March 27th, and
advising Plaintiff there was a charge for the transcript and how
to obtain the transcript if he did not have the means to pay for
it.[3] (Id. at ex. 2.) Apparently Meddings was unaware that the
stenographic notes had been destroyed. On May 22, 1998,
Plaintiff provided the court reporters' names and asked Meddings
for the estimated cost of the court record. (Id. at ex. 3.)

On January 28, 2002, in response to a request for records,
Plaintiff received correspondence from the Archives advising him
that while the records he sought may be there, he was required to
initiate his request with the Prothonotary/Superior Court in the
county that handled his case. (Id. at ex. 19.) On February 4,
2002, Plaintiff wrote to the Superior Court Reporter regarding
Case No. IN84-09-0298-0300 and requested the transcript of the

_____

[3]Meddings is not a named defendant.

4

proceedings. (Id. at ex. 4.) The Superior Court Reporters responded on March 6, 2002 and advised Plaintiff that his request could not be completed due to insufficient information. (Id. at ex. 5.) On an unknown date, Plaintiff responded and provided the dates of the proceedings, April 18, 1985 and August 21, 1985, the criminal action numbers IN84-09-0298 and IN84-09-0300, and the ID numbers 20406643 and DI83003848. (Id.) On September 24, 2004, Plaintiff wrote to the Official Court Reporter and "again" asked whether the 1983 and 1985 court record/transcripts in connection with IN8306-1713, IN84-09-0298 and IN84-09-0300 could be obtained, and the amount for the transcripts. (Id. at ex. 6.) On November 22, 2004, Feldman, at the time the Chief Court Reporter, provided Plaintiff with an estimate of one hundred dollars for transcripts of the plea and sentencing held on October 25, 1983 and February 17, 1984. (Id. at ex. 7.) The memo noted that the file was in Archives and that a fifty dollar deposit was required for each date. (Id.)

On February 14, 2005, Plaintiff wrote to Feldman and advised her that he sought copies of court records for 1983 and 1985 and inquired if the records could be identified with the information he had provided. (Id. at ex. 8.) On May 24, 2005, Plaintiff wrote to Feldman in response to her November 22, 2004 letter, and provided her the correct case numbers, IN84-09-0298 and IN84-09-

0300. (Id. at ex. 9-10.) On July 20, 2005, Plaintiff wrote a letter "To Whom It May Concern" and requested a copy of the plea agreement and transcript of the plea in case numbers IN84-09-0298 and IN84-09-0300. (Id. at ex. 11.)

On a date near October 14, 2005, Plaintiff sent Feldman fifty dollars for the estimated cost of the transcripts for case numbers IN8306-1713, IN84-09-0298 and IN84-09-0300. (Id. at ex. 14.) Plaintiff's October 14th letter states that the letter "comes on the heels of my sending you" the deposit. (Id.) In the letter, Plaintiff references the fact that his relatives who inquired about obtaining the transcripts were told that the 1983 conviction records were destroyed because Feldman had authorized the same. (Id. at ex. 14-15.) Plaintiff's relatives were told there was a chance of obtaining the copies of the transcript for IN84-09-0298 and IN84-09-0300. (Id. at ex. 15.)

On November 9, 2005, O'Hare provided Plaintiff a copy of the October 25, 1983 transcript and advised Plaintiff that the notes for the proceedings on April 8, 1985 were not at the Archives and had been destroyed pursuant to the twenty-year retention policy for criminal notes. (Id. at ex. 17.) On November 10, 2005, O'Hare provided Plaintiff a paid invoice for the transcript of the plea colloquy proceedings held on October 25, 1983, in Criminal ID No. IN83-05-0801. (Id. at ex. 13.) The invoice

6

stated that Plaintiff had provided a fifty dollar deposit and seventeen dollars was returned. (Id.) On December 12, 2005, Plaintiff wrote to the Archives. (Id. a ex. 18.) Frazier responded on January 9, 2006, and advised Plaintiff that purging or clean-up of criminal notes is performed by the staff at the Superior Court before the records are transferred to the Archives. (D.I. 18.) Once the file is purged, it is transferred to the Archives. (Id.)

In an affidavit signed on March 28, 2006, Plaintiff's sister, Phyllis A. Davis ("Davis"), states that on several occasions she appeared at the Office of the Official Court Reporters and advised Feldman and others that Plaintiff's 1983 and 1984 court records were needed, "in advance of their office claiming twenty years" had passed. (Id. at ex. 20.) Davis prepared a second affidavit dated March 1, 2009, that essentially contains the same information except that it specifically states that she sought to obtain Plaintiff's court records prior to April 8, 2005. (D.I. 92, ex. 17.) Similarly, in an affidavit signed on March 28, 2006, Plaintiff's father, Henry R. Taylor, Sr. ("Taylor"), states that on three different occasions prior to April 8, 2005, he appeared at the Office of the Official Court Reporters and advised Feldman and others that Plaintiff's 1983 and 1985 court records were needed. (D.I. 2, ex. 21.) Taylor's

7

second affidavit, dated March 1, 2009, and Davis' second affidavit both state that Feldman stated that it was possible the records were destroyed under her authority. (D.I. 92, exs. 17-18.) In an affidavit signed on April 27, 2007, Plaintiff states that on several occasions, he sent his relatives to the New Castle County Superior Court with requests for copies of his 1985 court records. (D.I. 2, ex. 12.)

## II. STANDARD OF LAW

The Court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the

person with the burden of proof on the disputed issue is correct."   Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).   If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.   See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants move for summary judgment on the grounds that none of the Defendants destroyed the stenographic notes, Plaintiff has no constitutional right to have guilty plea notes or transcripts preserved for a set period of time, there are no State law claims, and the claim is time-barred.[4]   Plaintiff opposes the Motion.

_____

[4]The record reflects that Plaintiff was notified on November 9, 2005, that the April 8, 1985 notes had been destroyed due to the twenty-year retention policy.   Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action."   Montgomery v. DeSimone, 159 F.3d 120, 126  (3d Cir. 1998).   The Court finds that Plaintiff timely filed his Complaint based upon the November 9, 2005 accrual date.

9

## III. DISCUSSION

### A. Personal Involvement

It is undisputed that Defendants did not destroy the records at issue. Plaintiff argues, however, that Defendants' reliance upon lack of personal involvement is misplaced. Plaintiff argues that his position is "whether this Court, as the ultimate factfinder, can infer a genuine issue of material fact exists as to whether there is a conspiracy to cover-up evidence of any other type of wrongdoing by any of the defendants in violation of Plaintiff's Court access rights." (D.I. 92, at 11.) Plaintiff argues Defendants were aware that he made repeated requests for Court records while offering to make payment, well in advance of the government retention/destruction policy at issue. (Id. at 12.) His claim of conspiracy is based upon the belief that the records were destroyed pursuant to a twenty-year policy, relied upon the trial court in denying his third motion for post-conviction relief, and that Defendants now claim the records were destroyed after eleven years. (Id.) Plaintiff argues that the Delaware Court's reliance upon the mistaken belief that the records were destroyed pursuant to a twenty-year policy, rather than destruction after eleven years, "impaired" his State application for postconviction relief because he was unable to provide a record in support of his third motion for

10

postconviction relief.

Initially the Court notes that Plaintiff's Complaint does not allege Defendants engaged in a conspiracy. He may not raise the claim in his response to the Defendants' Motion For Summary Judgment. The Court further notes that Plaintiff was provided the transcript of the plea colloquy proceedings held on October 25, 1983. Hence, only the stenographic note for the 1984 robbery case Plaintiff pled guilty, and was sentenced to, in 1985 are at issue.

The record reflects that the stenographic notes at issue were destroyed by the Archives' staff in 1995, and that Plaintiff made his first request for copies of the proceedings relating to the 1984 burglary case in 1998, three years after the stenographic notes had been destroyed. Plaintiff did not provide any money with his first request. He was advised that there was a charge and told how to obtain the transcript if he did not have the means to pay for it. Notably, Plaintiff did not remit payment for transcripts until October 2005, over twenty years after he was sentenced in 1985 on the 1984 burglary charges.

As to Feldman, the record reflects that in 2004 she provided Plaintiff with an estimate of the cost of transcripts for proceedings held in 1983 and 1984; that Plaintiff wrote to Feldman in February and May 2005; that Plaintiff sent Feldman

monies for the estimated cost of the transcripts; that she stated
she authorized the destruction of the 1983 conviction records;
and that at some point in time Feldman told Plaintiff's family
members that it was "possible" that records were destroyed under
her authority.

As to O'Hare, the record reflects that he provided Plaintiff
a copy of the 1983 transcript and advised Plaintiff that the
notes for the 1985 proceedings had been destroyed pursuant to the
twenty-year retention policy.[5]  As to Frazier, the record
reflects that he responded to a letter from Plaintiff and
explained the purging or clean-up process of criminal notes prior
to their transfer to the Archives.  The record makes no mention
of Defendants Cahill and Agnew.

An individual government defendant in a civil rights action
must have personal involvement in the alleged wrongdoing in the
alleged wrongs; liability cannot be predicated solely on the
operation of respondeat superior."  Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be
shown through allegations of personal direction or of actual

---

[5]From the documents submitted as well as the relevant
statutory history, it appears to the Court that originally there
was a ten-year retention policy, amended in 1992 to a twenty-year
retention policy following the statutory amendment of Superior
Court Criminal Rule 55.  This explains why the records were
destroyed after ten years, rather than twenty years.

knowledge and acquiescence."  Id.

It is undisputed that none of the defendants were personally

involved in the destruction of the records at issue.  Cahill and

Agnew are never mentioned in the record, and O'Hare merely

advised Plaintiff that the records had been destroyed.  While

Plaintiff and his family had numerous contacts with Feldman, she

did not destroy the records.  Moreover, it is evident as of 2004

that she was unaware the records had been destroyed as she

provided Plaintiff with an estimate of the cost of the

transcripts he sought.  Plaintiff and his family's assertions

that Feldman authorized the destruction of the 1983 records has

no relevance to the records for the 1984 burglary charge.

Finally, the Court finds that the affidavits stating that Feldman

stated that "it was possible" the records were destroyed under

her authority, does not create a genuine issue of material fact,

inasmuch as it is undisputed that she did not destroy the

records, and she was not the chief court reporter at the time the

records were destroyed.  As to Frazier, his only involvement

appears to be that he responded to a letter by Plaintiff and

explained how files were purged or cleaned-up before they were

transferred to the Archives.[6]

_____

[6]To the extent Plaintiff names Frazier and Feldman as
defendant based upon their supervisory positions, because their

13

There is no genuine issue of material fact.  Defendants were
not involved in the destruction of the stenographic notes at
issue.  Plaintiff's belated claims of conspiracy are frivolous.
Moreover, the record reflects nothing of the sort.  For the above
reasons, the Court will grant Defendants' Motion For Summary
Judgment.

## B.  Access to Courts

Plaintiff claims that the loss of the stenographic notes
denied him access to the courts.[7]  A violation of the First
Amendment right of access to the courts is only established where
a litigant shows that he was actually injured by the alleged
denial of access.  The actual injury requirement is a
constitutional prerequisite to suit.  Lewis v. Casey, 518 U.S.
343, 351 (1996); Christopher v. Harbury, 536 U .S. 403, 415

_____

policies or practices led to a constitutional violation,
Plaintiff must identify a specific policy or practice that the
supervisor failed to employ and show that: (1) the existing
policy or practice created an unreasonable risk of injury; (2)
the supervisor was aware that the unreasonable risk was created;
(3) the supervisor was indifferent to that risk; and (4) the
injury resulted from the policy or practice.  Beers-Capitol v.
Whetzel, 256 F.3d 120, 134 (3d Cir. 2001); see Sample v. Diecks,
885 F.2d 1099, 1118 (3d Cir. 1989).  The record does not indicate
Frazier or Feldman were aware of an unreasonable risk of injury
to Plaintiff and that they were indifferent to that risk.

   [7]Plaintiff repeatedly states that he is not alleging an
illegal conviction or sentence, yet he seems to use this lawsuit
as a means to challenge his conviction and status as an habitual
offender.  His sole remedy for challenging the same is by way of
habeas corpus.  Preiser v. Rodriguez, 411 U.S. 475 (1973).

14

(2002) (explaining that the constitutional right of access is
"ancillary to the underlying claim, without which a plaintiff
cannot have suffered injury by being shut out of court"). An
actual injury is shown only where a nonfrivolous, arguable claim
is lost. Christopher, 536 U.S. at 415.

Plaintiff claimed in his third motion for post-conviction
relief that he was deprived of his right to due process. Taylor,
2007 WL 2193752. At the time, the Superior Court addressed his
challenge to his plea to the 1984 robbery charges. Plaintiff
argued that the Court Reporters' Office's alleged destruction of
the "1983 and 1985 files and records" of his cases deprived him
of his due process right to have the merits of his guilty plea
challenge reviewed. Id. at *1. The Superior Court observed that
while Plaintiff's third post-conviction motion was filed under
the case number for the 1989 burglary conviction, his motion was
directed to IN84-09-0298 and IN84-09-0300 wherein he pled guilty
to two counts of burglary second degree in 1984. Id. In denying
the Motion the Superior Court stated,

> There is nothing to indicate why Taylor failed to raise
> his guilty plea challenge much earlier, and presumably
> before the transcripts of the plea colloquy were
> destroyed by the Court Reporters' Office in accordance
> with its 20 year document destruction policy. There is
> also no implication that some "external impediment"
> prevented Taylor's counsel from bringing an appeal to
> the Supreme Court after [the] plea in IN84-09-0298 and
> IN84-09-0300. A "[p]resumption of regularity attaches

15

to plea proceedings when the transcript has been
destroyed pursuant to court policy after the passage of
time." While this Court "recognizes the importance of
insuring that criminal defendants are afforded their
fundamental constitutional rights [,]" the Court
"cannot presume that [a defendant's] plea was invalid
based on the absence of the colloquy transcript,"
particularly when the transcript has been destroyed
pursuant to standard court policy. Therefore, "the
initial burden is on the moving defendant to present
some articulable reason which the motion judge deems a
credible indicator that the presumptively proper guilty
plea proceedings were constitutionally defective."
Here, Taylor has failed to meet that initial burden. .
. . Therefore, because Taylor has failed to meet his
burden, the Court must continue to presume that there
were no constitutional defects when taking Taylor's
plea. It follows that the destruction or loss of the
colloquy transcript does not present "a colorable claim
that there was a miscarriage of justice because of a
constitutional violation that undermined the
fundamental legality, reliability, integrity or
fairness of the proceedings leading to the judgment of
conviction.

Id. at *2.

It is clear from the Superior Court's ruling that Plaintiff

was not denied access to the courts. Plaintiff challenged his

guilty plea to the 1984 burglary charge and the Superior Court

addressed the issue. This third post-conviction motion was filed

in an effort to set aside the guilty plea so that Plaintiff could

be re-sentenced as a non-habitual offender. The Superior Court

considered his claims and found that they were procedurally

barred and that he failed to show cause for relief and actual

prejudice.

There is no genuine issue of material fact. Plaintiff was
not denied access to the courts. He presented his claims to the
Superior Court, but it did not rule in his favor. For the above
reasons, the Court will grant Defendants' Motion For Summary
Judgment.

## C. Constitutional Violation

Plaintiff claims the destruction of the notes violated his
right to due process. Defendants argue that Plaintiff has no
constitutional right to have stenographic notes preserved for a
set period of time.

When bringing a § 1983 claim, a plaintiff must allege that
some person has deprived him of a federal right, and that the
person who caused the deprivation acted under color of state law.
West v. Atkins, 487 US. 42, 48 (1988). A criminal defendant has
the right to an adequate review of his conviction, i.e., a
sufficiently complete record. Mayer v. City of Chicago, 404 U.S.
189, 198 (1971). However, neither the United States Supreme
Court, nor the Third Circuit, has held that due process requires
a verbatim transcript of the entire proceedings or that an
incomplete record confers automatic entitlement to relief. Fahy
v. Horn, 516 F.3d 169, 190 (3d Cir. 2008) (citing Mayer v. City
of Chicago, 404 U.S. 189, 198 (1971); Stirone v. United States,
341 F.2d 253, 256 (3d Cir. 1965)). A defendant is entitled to a

17

complete transcript only when the defendant has shown a "colorable need" for the transcript. Karabin v. Petsock, 758 F.2d 966, 969 (3d Cir. 1985) (citing Mayer, 404 U.S. at 195).

Plaintiff did not file a direct appeal of the 1984 burglary charges to which he pled guilty in 1985. Approximately thirteen year passed before Plaintiff first sought transcripts of the change of plea and sentencing hearings. By then, the notes had been destroyed. Plaintiff has cited no precedent to support the principle that he retains a constitutional right to the production of a new transcript years after the direct appeal has concluded in order to press a claim in a collateral proceeding. While the United States Supreme Court has held that an indigent defendant "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts," Griffin v. Illinois, 351 U.S. 12, 151 (1956), this rule does not translate into a complete verbatim transcript into perpetuity, so long as the State affords the defendant a "record of sufficient completeness" to permit proper consideration of his claims. See Draper v. Washington, 372 U.S. 487, 496 (1963).

It may be that Plaintiff relies upon a theory that Superior Court Criminal Rule 55 is an unconstitutional "policy". Rule 55 currently provides that the stenographic notes for felony criminal cases may be destroyed after twenty years. At the time

18

the stenographic notes were placed into the storage, Rule 55
contained no such provision. It was amended in 1992, three years
after the stenographic notes were sent to Archives with the cover
sheet instructing that the notes could be destroyed in ten years.
The Court is unaware of any authority that constitutionalizes a
State's rules for retention/destruction of records.[8]  Finally,
Plaintiff belated challenged his guilty plea before the Superior
Court.  When the Superior Court analyzed Plaintiff's claims
raised in the third postconviction motion, the record before it
allowed it to properly consider his claims.

Defendants are entitled to summary judgment as a matter of
law.  For the above reasons, the Court will grant Defendants'
Motion For Summary Judgment.

## D.  Supplemental Claims

Because summary judgment is appropriate as to the federal
claims, the Court declines to exercise jurisdiction over
Plaintiff's supplemental claims.  28 U.S.C. § 1367; De Asencio v.
Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003).

---

[8]While State officials have a duty to retain or disclose
exculpatory evidence, the record does not support a finding that
any defendant destroyed or altered any part of the record in bad
faith.  Cf. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); See
also Griffin v. Illinois, 351 U.S. 12 (1956) and Draper v.
Washington, 372 U.S. 487 (1963) discussed hereinabove.

19

## IV.    CONCLUSION

For the above reasons, the Court will grant Defendants'
Motion For Summary Judgment and will decline to exercise
jurisdiction over Plaintiff's supplemental claims.   The Court
will deny as frivolous and moot Plaintiff's Motion For Relief
From An Order.   (D.I. 103.)

An appropriate Order will be entered.